## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | No. 4:17-CR-00047 |
| v. | | (Judge Brann) |
| JEFFREY SCOTT JONES, | | |
| Defendant. | | |

## MEMORANDUM OPINION

### SEPTEMBER 24, 2020

Currently pending before the Court is Jeffrey Scott Jones' motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] Jones contends that he is entitled to release to home confinement due to the COVID-19 pandemic and his particular susceptibility to the virus.[2] The Government opposes the motion.[3]

## I.    BACKGROUND

In 2017, Jones was indicted for distribution of a controlled substance resulting in death, in violation of 21 U.S.C. § 841(a)(1).[4] Jones thereafter pled guilty, pursuant to a written plea agreement, to that count.[5] The guilty plea was accepted[6] and a Presentence Report ("PSR") was prepared.

---

[1]    Doc. 72.
[2]    Doc. 73.
[3]    Doc. 77.
[4]    Doc. 1.
[5]    Doc. 46.
[6]    Doc. 51.

The PSR provided details of the offense of conviction: Jones sold three small bags of heroin to an individual at around 2:45 p.m. on July 28, 2016 and, by 3:30 p.m. that day, that individual was found dead of a heroin and fentanyl overdose at his place of employment.[7] Jones acknowledged that he sold heroin to the decedent—who was Jones' friend—on more than one occasion when the decedent felt sick and needed heroin.[8]

The PSR also detailed Jones' lengthy criminal history, which dated back to 1976.[9] Despite the length of Jones' criminal record, most of his convictions were for relatively minor offenses that tracked closely to his drug addiction, including convictions for possession of marijuana, possession of cocaine, possession of heroin, driving under the influence, possession of drug paraphernalia, and theft.[10] Most notable among Jones' prior convictions is his 2016 conviction for possession with intent to deliver heroin.[11]

As just noted, Jones has struggled with drug addiction throughout his life, having begun using marijuana, amphetamines, and LSD at the age of sixteen.[12] Jones continually abused drugs throughout his life, having used cocaine, cocaine base,

---

[7]   Doc. 55 at 3-4.
[8]   *Id.* at 4.
[9]   *Id.* at 5-7.
[10]  *Id.*
[11]  *Id.* at 7.
[12]  *Id.* at 10.

heroin, oxycodone, and methamphetamine, among other drugs.[13] This history of substance abuse undoubtedly drove most, if not all, of Jones' criminal activity.

At sentencing, this Court noted Jones' substance abuse issues and found those issues, together with Jones' health and age, to be significant considerations in imposing sentence. Noting that individuals of Jones' age and health generally have a very low likelihood of recidivism, this Court varied downward from the 188 to 235-month Guidelines sentencing range and imposed a sentence of 120 months' imprisonment.[14]

Jones is currently incarcerated at the Federal Medical Center Devens, located in Ayer, Massachusetts ("FMC Devens"), and has a projected release date of September 9, 2025—meaning that, inclusive of potential good-conduct credit, Jones has served just over half of his ten-year sentence of incarceration. Jones has now filed a motion for compassionate release.[15] In his motion, Jones asserts that he suffers from advanced kidney and liver disease which have set him on an end-of-life trajectory and place him at a higher risk of serious illness or death should he contract COVID-19.[16] The Government concedes that Jones has demonstrated that extraordinary and compelling reasons exist to grant the motion, but responds that the relevant 18 U.S.C. § 3553(a) sentencing factors and the danger that Jones presents

---

[13]   *Id.* at 10-11.
[14]   *See* Doc. 66.
[15]   Doc. 72.
[16]   Doc. 73.

to the public militate against releasing him from custody.[17] Jones' motion is ripe for consideration and, for the following reasons, will be granted.

## II.   DISCUSSION

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization."[18] Congress has provided courts with the authority to modify sentences through its enactment of 18 U.S.C. § 3582(c)(1)(A). That statute permits courts to reduce an inmate's sentence if the inmate has exhausted his administrative remedies[19] and if, as relevant here, "extraordinary and compelling reasons warrant such a reduction."[20] Courts should also consider the relevant 18 U.S.C. § 3553(a) sentencing factors[21] and whether "the defendant is . . . a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[22]

### A.   Extraordinary and Compelling Reasons

Congress has not defined the term "extraordinary and compelling." Nevertheless, the Sentencing Guidelines define the term to include a terminal illness,

---

[17]   Doc. 77.

[18]   *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007).

[19]   The Government concedes that Jones has exhausted his administrative remedies, as he filed a request for release to home confinement with the BOP more than thirty days ago. (Doc. 77 at 17-18; *see United States v. Harris*, __ F.3d __, __, No. 20-1723, 2020 WL 5198870, at *1 (3d Cir. July 20, 2020) (concluding that a movant may file a motion for compassionate release with the district court "thirty days after the warden receives his request" for home confinement, even if the movant did not further appeal the denial of any such request).

[20]   18 U.S.C. § 3582(c)(1)(A)(i).

[21]   *Id.*

[22]   U.S. Sentencing Guidelines Manual § 1B1.13(2).

4

or any non-terminal illness "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[23] This definition is not, however, authoritative, as "[t]he Commission has not updated its policy statement to account for the changes imposed by the First Step Act, and the policy statement is now clearly outdated."[24] Thus, while "the Policy Statement provides useful guidance for district courts in assessing a defendant's eligibility for compassionate release, . . . it does not constrain a court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)."[25] "The burden rests with the defendant to show that a reduction in sentence is proper."[26]

Here, as the Government concedes,[27] Jones has sustained his burden of establishing that extraordinary and compelling reasons weigh in favor of granting compassionate release. As an initial matter, the Court notes that the existence of COVID-19 cannot alone justify compassionate release. As the United States Court of Appeals for the Third Circuit has explained:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone

---

[23] USSG § 1B1.13, cmt. n.1(A).

[24] *United States v. Rodriguez*, __ F.Supp.3d __, __, No. 2:03-CR-00271-AB-1, 2020 WL 1637331, at *3 (E.D. Pa. Apr. 1, 2020).

[25] *United States v. Guzman*, No. 3:16-CR-85, 2020 WL 4515476, at *3 (M.D. Pa. Aug. 5, 2020) (brackets and internal quotation marks omitted).

[26] *United States v. Rengifo*, No. CV 1:13-CR-00131, 2020 WL 4206146, at *2 (M.D. Pa. July 22, 2020).

[27] Doc. 77 at 18-20.

cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.[28]

Thus, to demonstrate the existence of extraordinary and compelling reasons for compassionate release, movants must show that they suffer from one or more ailments that render them particularly susceptible to serious illness or death should they contract COVID-19.

Jones' medical records reveal that he suffers from, as relevant here, stage five chronic kidney disease.[29] Jones' kidney disease is at a late stage, with renal failure noted in his medical records and notations in July 2020 stating that Jones was awaiting dialysis, a kidney transplant, and has "a 19.6% chance of mortality in the next three months."[30] The Centers for Disease Control and Prevention (CDC) lists chronic kidney disease as a factor that increases an individual's risk for serious complications from COVID-19;[31] these risks have been confirmed by numerous

---

[28]   *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

[29]   Doc. 75 at 8, 20-22. Jones also suffers from cirrhosis of the liver which requires a liver transplant, anemia, hypertension, hyperparathyroidism, hyperaldosteronism, gout, and gastro-esophageal reflux disease. *See* Doc. 73 at 2.

[30]   Doc. 75 at 22; *see id.* at 6.

[31]   *See* Centers for Disease Control and Prevention, *Coronavirus Disease 2019, People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 9, 2020). The CDC notes that individuals with chronic kidney disease are four times more susceptible to serious illness or death from COVID-19 as are individuals without underlying conditions. Centers for Disease Control and Prevention, *COVID-19 Associated Hospitalization Related to Underlying Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-underlying-medical-conditions.html (last visited Sept. 9, 2020).

studies.[32] Thus, it is clear that Jones is at a high risk of serious illness or death from COVID-19, and has "shown 'extraordinary and compelling reasons' that would permit the court to grant compassionate release."[33]

Furthermore, the relatively low prevalence of COVID-19 at FMC Devens does not weigh against compassionate release. Numerous courts "have recognized that the nature of the prison environment itself enhances the likelihood that prisoners will catch this highly contagious virus."[34] Additionally, there is currently one inmate and two staff members who are infected with COVID-19 at FMC Devens, while two inmates have died from COVID-19, and 47 inmates and 6 staff members have recovered from the virus.[35] This demonstrates that the introduction and possible spread of COVID-19 in that facility is more than a mere theoretical possibility.[36]

## B.    Relevant Sentencing Factors

Turning next to the relevant § 3553(a) factors, the Court concludes that said factors do not outweigh the extraordinary and compelling reasons to grant

---

[32]   *See* Centers for Disease Control and Prevention, *Evidence Used to Update the List of Underlying Medical Conditions that Increase a Person's Risk of Severe Illness from COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last visited Sept. 9, 2020).

[33]   *United States v. Horton*, No. 1:13-CR-16, 2020 WL 4473405, at *4 (M.D. Pa. Aug. 4, 2020).

[34]   *United States v. Perkins*, No. 14-CR-104-LM-1, 2020 WL 4783558, at *5 (D.N.H. Aug. 18, 2020).

[35]   *See COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Sept. 18, 2020).

[36]   Furthermore, while incarcerated Jones simply cannot effectively social distance. While COVID-19 may well be present in the community in which Jones will live, if released from custody he will be subject to home confinement which, by necessity, means that Jones will social distance and self-isolate.

compassionate release. The relevant sentencing factors to consider under § 3553(a) include, *inter alia*, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."[37]

As to the nature and circumstances of the offense and the history and characteristics of the defendant, the Court notes that the offense was a serious one. Although Jones was primarily a drug user—not a drug trafficker—and sold only a small quantity of heroin to a friend, the fact remains that this small transaction resulted in the tragic death of a 27-year-old man. The seriousness of the offense is reflected in the 120-month sentence that this Court imposed, which represented a downward variance of 68 months from the bottom of Jones' advisory Guidelines range. This, of course, bleeds to some extent into the need for the sentence to reflect the severity of the crime. Although not intentional, Jones' actions did result in the death of a young man, and a shorter sentence does not necessarily adequately reflect the severity of this crime.

---

[37]   18 U.S.C. § 3553(a).

As to Jones' history, he had a good upbringing in a middle class household, but began using drugs at the age of sixteen.[38] This led to a precipitous spiral in Jones' life; although he finished high school, he continued with a life-long use of illegal drugs that led to a series of arrests for largely minor crimes. Jones did, however, manage to maintain fairly steady employment and was collecting disability benefits prior to his incarceration.[39]

Turning to the need to protect the public, while Jones has a lengthy criminal history, that history is not particularly severe, and appears to have been driven primarily by his addictions. Presumably, after several years of incarceration, Jones is now entirely sober and, should he manage to maintain his sobriety upon release from incarceration, the Court views him as presenting a low risk of recidivism. This is reinforced by Jones' prison records, which reveal that he has had no misconducts issued against him in the past six months,[40] and by the fact that Jones has completed substance abuse counseling and other educational courses.[41] Such work "often demonstrates that an inmate no longer poses a threat to society, and weighs in favor of him or her receiving consideration for early release."[42]

Critically, Jones is now 64 years of age and suffers from kidney and liver failure; both of these conditions warrant organ transplants, and Jones is now on

---

[38] Doc. 55 at 9-11.
[39] *Id.* at 9-12.
[40] Doc. 73-3 at 1.
[41] *Id.* at 1-2.
[42] *United States v. Provost*, No. 3:18-CR-42, 2020 WL 4274570, at *6 (E.D. Va. July 24, 2020).

dialysis to treat his kidney condition. Not only do Jones' medical conditions make him an unlikely candidate to reoffend but, as this Court noted during sentencing, a study conducted by the United States Sentencing Commission reveals that offenders at the age of 65 have only a 4.1 percent recidivism rate.[43] This emphasizes the low risk that Jones poses to the public if released from custody and indicates only a minimal need to afford adequate deterrence through continued detention. It is notable that the Bureau of Prisons appears to agree with this assessment, as it has deemed Jones to be a minimum risk of recidivism based upon his PATTERN score;[44] Jones' PATTERN score is "minimum"—representing the lowest possible risk of recidivism.[45]

Turning to the need to promote respect for the law and to provide just punishment for the offense,[46] as noted previously, Jones has served just over half of his ten-year sentence. Under ordinary circumstances, the Court would be of the firm belief that release from custody at this time would not serve either of these sentencing goals. However, these are not ordinary circumstances. As detailed above,

---

[43]  *See* Doc. 61 at 8-9.

[44]  The PATTERN score is derived from a worksheet that "considers factors like age, criminal history and whether violence was involved in the offense." *United States v. Williams*, No. CR 18-335, 2020 WL 4934659, at *3 (W.D. Pa. Aug. 24, 2020). That "system is used to determine the risk and needs of inmates in BOP custody. Specifically, the system determines the recidivism risk of each inmate and assigns a recidivism risk score of minimum, low, medium, or high risk. The system also assesses each inmate and determines, to the extent practicable, the inmate's risk of violent or serious misconduct." *Defoggi v. United States*, No. CV 20-3889 (NLH), 2020 WL 2899495, at *2 n.1 (D.N.J. June 3, 2020) (internal quotation marks omitted).

[45]  Doc. 73-5 at 1.

[46]  18 U.S.C. § 3553(a).

even ignoring the COVID-19 pandemic, it is undisputed that Jones faces an approximately twenty percent chance of death within the next months. It is equally undisputed that Jones' health conditions place him at a significant risk of death or serious illness should he contract COVID-19. Given Jones' medical conditions, a COVID-19 infection would constitute—as a practical matter—a death sentence. As other courts have noted in similar circumstances, "[a] death sentence is neither a just sentence nor one that would promote respect for the law."[47]

Finally, with respect to the need to provide medical care in the most effective manner,[48] Jones requires significant medical treatment and it appears from the record that he is receiving more than adequate care. However, there is no evidence that Jones will receive inferior care upon his release from custody. To the contrary, Jones should be able to obtain comparable or better treatment at a private facility.[49] This consideration is therefore, at most, neutral. Accordingly, after weighing the relevant § 3553(a) factors, the Court concludes that said factors do not outweigh the extraordinary and compelling reasons for compassionate release.

### C.    Dangerousness

Finally, the Court must consider whether "the defendant is . . . a danger to the safety of any other person or to the community, as provided in 18 U.S.C.

---

[47]    *United States v. Perkins*, No. 14-CR-104-LM-1, 2020 WL 4783558, at *9 (D.N.H. Aug. 18, 2020).

[48]    18 U.S.C. § 3553(a)(2)(D).

[49]    *Cf. Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (noting that, in the prisoner context, "negligent treatment or even medical malpractice" does not violate the Constitution).

§ 3142(g)."[50] As discussed above, it is apparent to the Court that Jones no longer presents a significant danger to his community. Although Jones' criminal history is lengthy and continued until his incarceration, his criminal activity had generally been minor, did not involve the use of violence, and was driven primarily by his addiction. Now that Jones is sober, ill, and of relatively advanced age, the Court simply cannot conclude that Jones presents a serious risk to others. The only person to whom Jones presents a danger is himself—there is a risk that he will relapse, continue his drug use, and harm himself through that drug use. However, this danger does not weigh significantly against compassionate release.

### D.     Weighing the Relevant Considerations

After weighing the relevant considerations, the Court concludes that the § 3553(a) factors, along with any minimal danger that Jones presents to the public, do not outweigh Jones' extraordinary and compelling reasons for compassionate release. Ultimately, the Court has grave concerns for Jones' health and safety should he remain incarcerated for the duration of this pandemic, and believes that compassionate release is appropriate.

Consequently, the Court will grant Jones' motion for compassionate release. However, to mitigate any risk that Jones may pose, minimize his potential exposure to COVID-19, and best promote respect for the law and provide just punishment for

---

[50]   USSG § 1B1.13(2).

the offense of conviction, the Court will convert the remainder of Jones' term of incarceration into a term of supervised release and direct home confinement for at least a portion of that term.

## III.   CONCLUSION

For the foregoing reasons, Jones' motion for compassionate release will be granted.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge